PIERCE, Judge.
Appellant Monroe Landholding Corp., a Florida corporation, appeals to this Court a final order awarding judgment for $5,000.-00 (less attorney’s fee and filing fee) in favor of appellees, Karl Maier and Frieda Maier, his wife, in an interpleader suit filed in the Pinellas County Circuit Court by W. Fred Campbell, plaintiff therein, against the corporation and the Maiers, defendants below.
On April 17, 1968, W. Fred Campbell, a realtor in St. Petersburg, filed his inter-pleader action alleging that on December 6, 1967, Monroe and the Maiers entered into a written contract whereby the Maiers agreed to sell and Monroe agreed to buy certain property adjacent to U.S. Highway 19 north of St. Petersburg. In accordance with the agreement Monroe had put up $5,000 with broker Campbell as earnest money on the purchase. Ninety days from date of contract, or until March 6, 1968, was allowed for closing, at which time Monroe was to pay $15,000 in addition to its original $5,000, and execute a purchase money mortgage to the Maiers for the $80,000 balance. At the expiration of the 90 days, Monroe requested and was granted, without consideration, an extension of 15 days additional time within which to close.
During such extended interval, on or about March 18, 1968, the State Road Department announced officially that U.S. Highway 19 would be a limited access highway and that the property in question would be unavailable for ingress and egress to and from the highway. Monroe then attempted to “call the deal off” and demanded the $5,000 earnest money from Campbell. The Maiers insisted that $5,000 be paid over to them. Campbell, caught between two fires, filed the present inter-pleader suit, making Monroe and the Maiers defendants, which all parties agree was the proper action.
The only issue before the trial Court was disposition of the $5,000 earnest money, and after the issue had been litigated our final order was entered, whereby the Court ordered the money to be turned over to the Maiers, less $350 allowed as attorney’s fee for plaintiff Campbell and $17 for filing fee. Monroe has appealed the order to this Court. We affirm.
Both parties stipulated at the trial that neither Monroe nor the Maiers, at the time the contract was signed, knew “that the property or the highway-frontage part of it was to be taken for highway or other public purposes”. However, about a month later, in January, 1968, Monroe learned *379 that the State of Florida was going to take over the property for highway purposes and that there would probably be no access to Highway 19 in the area of the property in question. But Monroe did nothing to repudiate or back off from the deal nor any attempt to disclaim intention to consummate the purchase. On the contrary, about the time of deadline for closing, as before stated, Monroe procured an extension of time to close. ■ • .
The time for Monroe to have made some move to “get off” the deal was at the time it learned of the Road Department’s definite intention to acquire the property and close off the adjacent highway frontage, or a reasonable time thereafter. But when the buyer, in effect, confirmed and ratified the purchase by doing nothing except to obtain an extension of time to close, he cannot thereafter be heard to recant and disavow the written agreement.
This Court will take judicial notice that U.S. Highway No. 19 is one of the main north-and-south arterial highways on the lower west coast of Florida, very heavily travelled and becoming more and more congested from vehicular use as time goes on. This being so, the age-old doctrine of caveat emptor, if nothing else, sufficiently puts the prospective buyer of such adjacent property on reasonable notice that the road-building authority may at any time find it necessary, in the best interest and protection of the public at large, to add width to the highway in any given area.
This would not give unfair advantage to existing property owners along the highway because if a prospective purchaser wanted to protect himself against the contingency of a highway-widening he could easily do so by insisting upon a clause or clauses in the original contract safeguarding him against such fortuity. As a matter of fact, it does not necessarily follow that, in such eventuality, it would be the intended purchaser who would stand the greater chance of being injured because of such governmental taking.
The instant case is a classic example. If Monroe had gone ahead and closed out the deal with the Maiers for the contract price of $100,000, even though it knew the property was going to be condemned, it could have sold it to the State at a fairly-certain profit — because that is exactly what the Maiers did after Monroe “backed out” of the deal. The Maiers sold it to the State Road Department on August 29, 1968, for $113,200. Presumably Monroe could have made the same deal with the State, if it had been the owner in August, because the State was not interested in identity of the owner but only acquiring the property. This would have been a profit of $13,200 on an actual monetary investment of only $20,000, because $80,000 of the purchase price of $100,000 was absorbed in the purchase-money mortgage back to the Maiers, which the State would simply pay off out of the cost price to the State.
Monroe in its brief here stresses the doctrines of impossibility of performance, of failure to supply good merchantable title, of failure of consideration, and of commercial frustration. These high-sounding imponderables tend merely to confuse and complicate unnecessarily the very simple issue in the instant case, namely, whether Monroe, with the red light of eminent domain blinking all around the area, had the right to unduly procrastinate and delay closing of the deal until just before the extension deadline, and then at the last minute repudiate its agreement to go through with the purchase and expect to get its earnest money back. We hold that Monroe was not within its rights in so doing and that thereby it forfeited any claim to return of the deposit.
The final order appealed is therefore affirmed.
HOBSON, A. C. J., and MANN, J., concur.